UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term

Grand Jury Sworn in on May 18, 2022

| UNITED STATES OF AMERICA | CRIMINAL NO. 22-cr-310 |
|---|---|
| v. | GRAND JURY ORIGINAL |
| COLLIN EDWARDS,<br>GARNELL LUCAS,<br>JUSTIN JAMES WHITE,<br>LAURA GARVIN,<br>BILAAL BRIGGS, and<br>CHASE COLE,<br><br>Defendants. | VIOLATIONS:<br>21 U.S.C. § 846<br>(Conspiracy to Distribute and Possess with Intent to Distribute 400 Grams or More of a Mixture and Substance Containing a Detectable Amount of Fentanyl and a Mixture and Substance Containing a Detectable Amount of Cocaine);<br>18 U.S.C. § 1349<br>(Conspiracy to Commit Wire Fraud);<br>18 U.S.C. § 371<br>(Conspiracy to Commit Aggravated Identity Theft);<br>18 U.S.C. § 1028A(a)(1)<br>(Aggravated Identity Theft);<br><br>FORFEITURE:<br>18 U.S.C. § 982; 21 U.S.C. § 853(a) and (p); and 28 U.S.C. § 2461(c) |

# INDICTMENT

The Grand Jury charges that:

At all times relevant to this indictment:

## COUNT ONE

1.      From a date unknown, but beginning by at least June 2020 and continuing through at least March 29, 2022, within the District of Columbia and elsewhere, defendants **COLLIN EDWARDS, GARNELL LUCAS, JUSTIN JAMES WHITE, LAURA GARVIN, BILAAL BRIGGS,** and **CHASE COLE,** did knowingly and willfully combine, conspire, confederate, and agree together and with other persons both known and unknown to the Grand Jury, to unlawfully, knowingly and intentionally distribute and possess with intent to distribute four-hundred grams or more of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (Fentanyl), a Schedule II narcotic drug controlled substance, and a detectable amount of a mixture and substance containing Cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(vi), and 841(b)(1)(C).

<u>Quantity of Fentanyl and Cocaine Involved in the Conspiracy:</u>

2.      With respect to defendant **COLLIN EDWARDS,** his conduct as a member of the narcotics conspiracy charged in Count One, which includes the reasonably foreseeable conduct of other members of the narcotics conspiracy charged in Count One, involved four-hundred grams or more of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (Fentanyl), a Schedule II narcotic drug controlled substance, and a detectable amount of a mixture and substance containing a detectable amount of Cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(vi), and 841(b)(1)(C).

3.      With respect to defendant **GARNELL LUCAS,** his conduct as a member of the narcotics conspiracy charged in Count One, which includes the reasonably foreseeable conduct of

other members of the narcotics conspiracy charged in Count One, involved four-hundred grams or more of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (Fentanyl), a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(vi).

4. With respect to defendant **JUSTIN JAMES WHITE,** his conduct as a member of the narcotics conspiracy charged in Count One, which includes the reasonably foreseeable conduct of other members of the narcotics conspiracy charged in Count One, involved four-hundred grams or more of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (Fentanyl), a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(vi).

5. With respect to defendant **LAURA GARVIN,** her conduct as a member of the narcotics conspiracy charged in Count One, which includes the reasonably foreseeable conduct of other members of the narcotics conspiracy charged in Count One, involved four-hundred grams or more of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (Fentanyl), a Schedule II narcotic drug controlled substance, and a detectable amount of a mixture and substance containing a detectable amount of Cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(vi), and 841(b)(1)(C).

6. With respect to defendant **BILAAL BRIGGS,** his conduct as a member of the narcotics conspiracy charged in Count One, which includes the reasonably foreseeable conduct of other members of the narcotics conspiracy charged in Count One, involved four-hundred grams or more of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-

phenylethyl)-4-piperidinyl] propanamide (Fentanyl), a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(vi).

7. With respect to defendant **CHASE COLE,** his conduct as a member of the narcotics conspiracy charged in Count One, which includes the reasonably foreseeable conduct of other members of the narcotics conspiracy charged in Count One, involved four-hundred grams or more of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (Fentanyl), a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(vi).

**(Conspiracy to Distribute and Possess with Intent to Distribute 400 or More Grams of a Mixture and Substance Containing a Detectable Amount of Fentanyl and a Mixture and Substance Containing a Detectable Amount of Cocaine** in violation of Title 21, United States Code, Section 846)

## COUNT TWO

### Background

8. On March 18, 2020, the President of the United States signed into law the Families First Coronavirus Response Act ("FFCRA"), which provided additional flexibility for state unemployment insurance agencies and additional administrative funding to respond to the COVID-19 pandemic.

9. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was signed into law on March 27, 2020. It expanded states' ability to provide unemployment insurance ("UI") for many workers impacted by the COVID-19 pandemic, including for workers who are not ordinarily eligible for unemployment benefits. The purported goal of the CARES Act was to provide emergency assistance and health care for individuals, families, and businesses affected by the 2020 coronavirus pandemic.

10. The CARES Act created the Pandemic Unemployment Assistance ("PUA") program. Under PUA, states are permitted to provide PUA to individuals who are self-employed, seeking part-time employment, or otherwise would not qualify for regular UI compensation.

11. To qualify for PUA benefits, an individual must not be eligible for regular UI benefits and be unemployed, partially unemployed, or unable or unavailable to work because of certain health or economic consequences of the COVID-19 pandemic.

12. The CARES Act also established the Pandemic Emergency Unemployment Compensation ("PEUC") program.

13. PEUC covers most individuals who have exhausted all rights to regular UI compensation under state or federal law and who are able to work, available for work, and actively seeking work as defined by state law.

14. PEUC also gives states the flexibility in determining whether an individual is actively seeking work if the individual is unable to search for work because of COVID-19, including because of illness, quarantine, or movement restrictions.

15. The CARES Act also established the Federal Pandemic Unemployment Compensation ("FPUC") program.

16. From April 4, 2020, through July 31, 2020, FPUC allowed states to give an additional $600 per week to individuals collecting regular UI compensation, PEUC, PUA, and other approved UI benefit programs by the state.

17. FPUC was reauthorized in December 2020, and beginning in January 2021, FPUC allowed states to provide an additional $300 per week to individuals collecting regular UI compensation, PEUC, PUA, and other approved UI benefit programs by the state. The additional, $300-per-week FPUC benefits expired on September 6, 2021.

18. Bank of America ("BofA") was and is a federally insured bank operating throughout the United States.

19. Several States, including but not limited to, Maryland, California, Ohio, Arizona, Michigan, North Carolina, and Nevada contracted with Bank of America to assist in providing benefits for approved UI applicants.

20. For example, prior to April 2021, if Maryland State Department of Labor ("DOL") approved an unemployment insurance claim, BofA, pursuant to a contract with MD DOL, would create and mail a BofA Prepaid VISA debit card with the claimant's name on it, to the claimant based upon information received from MD DOL. MD DOL would subsequently authorize the electronic application of UI benefits to the debit card and continue to do so on a periodic basis if the claimant continued to file for benefits.

21. BofA tracks the funds issued through this program. BofA also has the ability to track which phone numbers call into their system to check the balances of unemployment insurance benefits.

22. An individual applying for UI benefits online must submit several categories of personal identifying information ("PII"), in order to verify their identity, before their application and benefits are approved and debit cards are generated.

### The Conspiracy

23. Beginning on a date unknown, but no later than June 2020 and continuing until in or around at least May 2021, within the District of Columbia and elsewhere, **COLLIN EDWARDS** and **JUSTIN JAMES WHITE**, and other conspirators, knowingly and willfully conspired, combined, confederated, and agreed to commit wire fraud by devising, intending to devise, and by engaging in a scheme to defraud and to obtain money and property from the States

of California, Maryland, North Carolina, and others, by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing and attempting to execute the scheme to defraud, knowingly caused to be transmitted by means of wire communications in interstate commerce, any writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1349.

### The Object of the Conspiracy

24. The object of the conspiracy was for the conspirators to unjustly enrich themselves by fraudulently applying for and obtaining UI benefits for personal use by submitted illegally obtained third party PII and defrauding various states.

### Manner and Means of the Scheme and Artifice to Defraud

25. Members of the conspiracy used the following manner and means, among others, to accomplish the object of the conspiracy:

    a. **COLLIN EDWARDS** and **JUSTIN JAMES WHITE** and other conspirators illegally obtained, from an unknown database, a large trove of PII from individuals throughout the United States.

    b. **COLLIN EDWARDS** and **JUSTIN JAMES WHITE** shared this PII with each other by way of cellular telephone text messaging.

    c. **COLLIN EDWARDS** and **JUSTIN JAMES WHITE** and other conspirators used this PII to fill out unemployment insurance applications and create fraudulent UI user profiles in victims' names in multiple states, including but not limited to Maryland, California, and North Carolina.

    d. **COLLIN EDWARDS** and **JUSTIN JAMES WHITE** and other conspirators caused electronic bank accounts to be set up in victims' names

    and physical debit cards to be created and mailed in victims' names to addresses in the District of Columbia and elsewhere in the same victim names.

  e. **COLLIN EDWARDS, JUSTIN JAMES WHITE**, and other conspirators used these debit cards to make purchases, wire transfers, and ATM withdrawals within the District of Columbia and elsewhere.

26. In furtherance of the conspiracy, and in order to effect the objects thereof, defendants **COLLIN EDWARDS, JUSTIN JAMES WHITE**, and other conspirators in various combinations, directly and indirectly, within the District of Columbia and elsewhere, took various actions, including, but not limited to, the following:

  a. Between in or around June 2020 and continuing through at least May 2021, **JUSTIN JAMES WHITE** and **COLLIN EDWARDS** shared detailed PII documents containing victims' social security numbers, dates of birth, places of birth, phone numbers, and addresses.

  b. On or about June 5, 2020, **JUSTIN JAMES WHITE** sent a series of text messages to **COLLIN EDWARDS** with multi-page PDF reports attached that included PII for several individuals including victim M.M.

  c. In or around June 5, 2020, a member of the conspiracy used M.M's PII to apply for unemployment insurance benefits with the State of Maryland in M.M.'s name and caused the funds to be sent an address on Rutledge Ct., in Severn, Maryland. Maryland in turn authorized $43,370 in unemployment insurance funds for M.M.

    d.      On or about June 17, 2020, **JUSTIN JAMES WHITE** sent **COLLIN EDWARDS** a text message containing what appears to be a full credit report for victim S.K. The document contained S.K.'s social security number, date of birth, e-mail address, birth location, and past addresses.

    e.      On or about June 17, 2020, **JUSTIN JAMES WHITE** send **COLLIN EDWARDS** a text message containing what appears to be a full credit report for victim C.F. The document contains C.F.'s social security number, date of birth, e-mail address, birth location, and past addresses.

    f.      On July 8, 2020, **JUSTIN JAMES WHITE** send **COLLIN EDWARDS** a text message containing what appears to be a full credit report for victim M.C. The document contains M.C.'s social security number, date of birth, e-mail address, birth location, and past addresses.

    g.      A member of the conspiracy used this information to cause a UI benefits debit card in M.C.'s name to be mailed to an address on Sherman Avenue, in the District of Columbia.

    h.      On July 8, 2020, **JUSTIN JAMES WHITE** sent **COLLIN EDWARDS** a PII report for victim N.D.

    i.      On July 12, 2020, **COLLIN EDWARDS** send **JUSTIN WHITE** a photo of the physical BofA debit card issued in C.F.'s name, pre-loaded with UI benefits.

    j.      On July 12, 2020, **COLLIN EDWARDS** sent **JUSTIN JAMES WHITE** two text messages asking ""What's the total. . . On there." **JUSTIN**

JAMES WHITE responded "10088." EDWARDS responded "Bet it." JUSTIN JAMES WHITE replied, "easy money."

k. On or about July 12, 2020, **JUSTIN JAMES WHITE** sent **COLLIN EDWARDS** a text message containing seven names and dollar amounts of available UI benefits. Included in this text message was victim M.M.'s full name followed by " - Rutledge (16.7k)."

l. On July 14, 2020, a member of the conspiracy used the UI benefits card issued in victim C.F.'s name at a CVS in the District of Columbia.

m. On July 14, 2020, a member of the conspiracy used the UI benefits card issued in C.F.'s name at a Del Friscos Double Eagle Steakhouse in the District of Columbia.

n. On or about July 16, 2020, **COLLIN EDWARDS** sent **JUSTIN JAMES WHITE** a text message asking, "what ones are still good."

o. On or about July 16, 2020, **JUSTIN JAMES WHITE** responded by sending a text message containing seven victim names, including the full name of victim M.M.

p. On multiple occasions between June 2020 and August 2020, **JUSTIN JAMES WHITE** used his telephone to check the balances of M.M.'s fraudulently created unemployment insurance account.

q. On or about July 21, 2020, **COLLIN EDWARDS** sent **JUSTIN JAMES WHITE** a series of text messages containing photos of fraudulently obtained pre-loaded UI debit cards, including two cards issued in the name of victim S.K. and victim N.D.

r.     On or about July 21, 2020, **JUSTIN JAMES WHITE** sent **COLLIN EDWARDS** a text message with victim S.K.'s name and the number "2,556," indicating the UI benefits balance.

s.     On July 21, 2020, **JUSTIN JAMES WHITE** sent **COLLIN EDWARDS** a text message with three victim names, with dollar amounts, including victim N.D., stating "N[ ] – 4,961."

t.     On July 23, 2020, **JUSTIN JAMES WHITE** sent **COLLIN EDWARDS** a text message updating him on the UI benefits balances for victims S.K. and N.D. stating "s k[ ] - $1,500   N[ ] d[ ] – 56."

u.     In or around August 5, 2020, a member of the conspiracy rented an automobile from Enterprise Rent-a-Car to be used for making cash withdrawals at ATM machines using fraudulently obtained unemployment benefits debit cards.

v.     On or about August 5, 2010, members of the conspiracy, in disguise, made multiple cash withdrawals from M.M.'s UI benefits card at Bank of America branches using this rented automobile.

w.     On or about August 7, 2020, a member of the conspiracy used the UI debit card issued in M.M.'s name to purchase over $8,000 in money orders from various United States Postal Service locations throughout Maryland.

x.     On September 15, 2020, a member of the conspiracy used the UI benefits debit card issued in N.D.'s name to make a $980 withdrawal at an ATM in the District of Columbia.

(**Conspiracy to Commit Wire Fraud**, in violation of Title 18, United States Code, Sections 1349)

## COUNT THREE

27. Paragraphs 8 through 26 are reincorporated and realleged herein.

28. Beginning on a date unknown, but no later than June 2020 and continuing until in or around at least May 2021, within the District of Columbia and elsewhere, **COLLIN EDWARDS, JUSTIN JAMES WHITE**, and other conspirators, did knowingly and willfully combine, conspire, confederate, and agree with each other and others to knowingly commit the crime of aggravated identity theft in violation of Title 18, United States Code, Section 1028A, that is, to knowingly transfer, possess, and use, without lawful authority, various means of identification of other persons, during and in relation to the wire fraud scheme and conspiracy described in Count Two of this Indictment, knowing that the means of identification belonged to other actual persons.

(**Conspiracy to Commit Aggravated Identity Theft**, in violation of Title 18, United States Code, Section 371)

## COUNT FOUR

29. Paragraphs 8 through 26 are reincorporated and realleged herein.

30. From in or around June 17, 2020 and continuing through at least July 14, 2020, within the District of Columbia and elsewhere, **COLLIN EDWARDS** and **JUSTIN JAMES WHITE,** did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person during and in relation to the crime of conspiracy to commit wire fraud, in violation of 18 U.S.C. 1349, as set forth in Count Three of this Indictment, by possessing, transferring, and using the name of a victim C.F.

(**Aggravated Identity Theft**, in violation of Title 18, United States Code, Sections 1028A(a)(1) and 2)

## COUNT FIVE

31. Paragraphs 8 through 26 are reincorporated and realleged herein.

32. From in or around July 8, 2020 and continuing through at least September 15, 2020, within the District of Columbia and elsewhere, **COLLIN EDWARDS** and **JUSTIN JAMES WHITE,** did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person during and in relation to the crime of conspiracy to commit wire fraud, in violation of 18 U.S.C. 1349, as set forth in Count Three of this Indictment, by possessing, transferring, and using the name of a victim N.D.

(**Aggravated Identity Theft**, in violation of Title 18, United States Code, Sections 1028A(a)(1) and 2)

## FORFEITURE ALLEGATION

33. Upon conviction of the offenses alleged in Counts One through Five of this Indictment, the defendants shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853(a), any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of these offenses; and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of these offenses. The United States will also seek a forfeiture money judgment against the defendants equal to the value of any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of these offenses.

2. Upon conviction of the offense alleged in Counts One through Five of this indictment, the defendants shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of this offense. The United States will also seek forfeiture money judgement against the defendants equal to the value of any property,

real or personal, that constitutes or is derived, directly or directly, from gross proceeds traceable to the commission of this offense.

3. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property that cannot be divided without difficulty;

the defendants shall forfeit to the United States any other property of the defendants, up to the value of the property described above, pursuant to 21 U.S.C. § 853(p).

(**Criminal Forfeiture**, pursuant to Title 18, United States Code, Sections 982, Title 21, United States Code, Section 853(a) and (p), and Title 28, United States Code, Section 2461(c))

A TRUE BILL:

FOREPERSON.

*Matthew M. Graves/ccw*
Attorney of the United States in
and for the District of Columbia.