UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | 22-CR-310 (APM) |
| | : | |
| **COLLIN EDWARDS,** | : | |
| Also known as "Chills," | : | |
| Defendant. | : | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS

The United States of America, by and through Matthew Graves, the United States Attorney for the District of Columbia, and his assistant, Kevin Rosenberg, Assistant United States Attorney for the District of Columbia, respectfully submit this memorandum in opposition to Defendant Edwards's Motion to Suppress and Request for a *Franks* Hearing (ECF Doc. 153) (the "Motion"). Defendant Edwards seeks to suppress evidence seized from an apartment located at 1346 4th Street Southeast, Apartment 508, Washington, D.C. ("Navy Yard Apartment").

Defendant Edwards's Motion falls short on several grounds. As an initial matter, Defendant Edwards was essentially "squatting" in an apartment, rented with fake documents, was $95,000 in arrears, and had no apparent permission to be present in the unit. He has not explained his status in the unit or how he has a legitimate privacy interest in the unit in order to suppress the evidence taken from the apartment.

Defendant Edwards argues that the probable cause supporting the search warrant was so deficient that the *Leon* exception does not apply. *United States v. Leon*, 468 U.S. 897 (1984). He ultimately requests a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978) to attack the credibility of the affiant. In support of his arguments, Defendant Edwards conjures up what he purports to be a "false statement" with no actual showing that anything contained in the search warrant is false. Defendant Edwards does not attempt to show why the statements he alleges are

false were made knowingly and intentionally, or with reckless disregard for the truth, or how absent those statements, the search warrant lacks probable cause.

The Defendant's Motion should be denied without a *Franks* hearing.

## I. PROCEDURAL BACKGROUND

A sealed Indictment was returned on September 15, 2022, charging Defendant Edwards with six criminal offenses. (ECF Doc. 1). Defendant Edwards was charged with conspiracy to distribute and possess with the intent to distribute 400 grams or more of fentanyl and a detectable amount of cocaine. *Id*. Defendant Edwards was also charged with conspiracy to commit wire fraud, conspiracy to commit aggravated identity theft, and two counts of aggravated identity theft. *Id*.

All Co-Defendants were arrested on or about September 20, 2022. (ECF Docs. 7-10). Defendant Edwards remained a fugitive until October 20, 2022. (ECF Doc. 37). On May 16, 2023, a Superseding Indictment was returned against Defendant Edwards. (ECF Doc. 108). The Superseding Indictment charges Defendant Edwards with the same offenses as those included in the initial Indictment. *Id.*

Defendant Edwards is set to proceed to trial on this matter on November 29, 2023.

## II. FACTUAL BACKGROUND

On June 22, 2021, maintenance workers at the Avalon Russet apartment complex in Laurel, Maryland discovered a make-shift drug laboratory when they entered an apartment to address an emergency leak issue occurring in the building. They took photos and called the Anne Arundel, Maryland Police Department.

The Washington Field Office of the Federal Bureau of Investigation ("FBI") was eventually notified of the drug laboratory discovery, and they traveled to the location to

investigate. By the time they arrived, the pills, pill press, black plastic tub, and paraphernalia had all been moved to a new location.

FBI agents interviewed residents and employees who provided enough information for the agents to identify a phone number belonging to a frequent visitor to the apartment, Defendant Garnell Lucas. Through a series of cellular telephone location search warrants, FBI agents traced Co-Defendant Lucas to the Navy Yard Apartment. Agents observed both Defendant Edwards and Co-Defendant Lucas coming and going from the apartment on a regular basis. Agents learned that this apartment was obtained through wire fraud and began investigating the crime. On March 25, 2022, Magistrate Judge Zia M. Faruqui reviewed an affidavit in support of a search warrant and found probable cause to believe evidence and instrumentalities of wire fraud would be found within the confines of the Navy Yard Apartment. (Ex. 1, ¶ 18). The warrant was submitted in support of an investigation into wire fraud offenses being committed throughout the District of Columbia metropolitan area. (Ex. 1, ¶ 4).

Agents executed the search warrant on March 29, 2022. They recovered a substantial amount of evidence of wire fraud from inside the apartment, including evidence of a sophisticated scheme to commit unemployment insurance fraud ("UI fraud") using stolen personal identifying information ("PII") from unsuspecting victims. This forms the basis for the charges included in Counts Two, Three, Four, and Five of the Indictment, and Counts Two, Three, and Four of the Superseding Indictment. Additionally, in plain view, agents recovered fentanyl pills, United States currency, a digital scale, a homemade powder scooper, and other drug distribution paraphernalia.

### III.     THE SEARCH WARRANT

The search warrant in question requested permission to seize fruits, instrumentalities, and evidence of wire fraud violations. Ex. 1, Att. B. The warrant identified the location of 1346 4th Street, SE, Apartment 508, Washington, D.C. as the target residence to be searched. *Id.* at ¶ 2.

The warrant affidavit explained that, on January 15, 2020, the Navy Yard Apartment complex received a rental application through their online portal in the name of "Omar Hayden." *Id.* at ¶ 5. The application contained an Ohio driver's license in the name of Omar Elijah Hayden, with a date of birth of September 10, 1989 and a social security number of xxx-xx-8041. *Id.* The FBI determined that this apartment was procured using a fraudulent driver's license because the State of Ohio had never issued a license to an Omar Elijah Hayden with the included identifiers. *Id.* at ¶ 9. The FBI also determined that it appeared that "there is no one in the United States with the name OMAR ELIJAH HAYDEN and the date of birth September 10, 1983." *Id.*

The entire apartment-renting process from application through approval was conducted virtually, that is, online. *Id.* at ¶ 6. Two unknown individuals came to the management office to retrieve access keys to the newly rented apartment, unit 508. *Id.* To date, the FBI has been unable to determine who entered the management office at the Navy Yard Apartment to collect the key, in part because no person named Omar Elijah Hayden with an Ohio driver's license exists. *Id.* at ¶¶ 9, 10

The lease began on January 18, 2020 with an initial fee of $2,453 and a monthly rate of $3,553. *Id.* at ¶ 7. Following the initial fee of $2,453, not a single rent payment was made for the apartment in the subsequent 26-month period. *Id.* at ¶ 8. At the time of the warrant, the apartment had incurred in excess of $93,000 in back rent. *Id.*

The investigation revealed that this was not the only rental unit in the area that was obtained using this fake driver's license in the name of "Omar Elijah Hayden." *Id.* at ¶ 11. In fact, this same fraudulent license had been used to procure at least six other rentals in the District of Columbia area. *Id*. The locations of these rentals included Hyattsville, Suitland, Upper Marlboro, and College Park, Maryland, along with another location in Washington, D.C. *Id.* Each rental company reported that either a portion or the entirety of the rental payments were missed, and the collective loss from rentals using this fraudulent Ohio driver's license totaled over $350,000. *Id.*

With respect to the Navy Yard Apartment, the FBI observed Defendants Edwards and Lucas coming and going from the apartment during a six-month period between October 2021 and March 2021. *Id.* at ¶ 10. Neither of the defendants resembled the person depicted on the fraudulent Ohio driver's license, but they continued to come and go from the rental unit. *Id*. On one occasion, Defendant Edwards attempted to obtain a replacement key, but was denied because only someone "who confirmed their identity as the lease holder by presenting valid identification" could receive a replacement key. *Id*. During the week of March 17, 2022, an employee at the Navy Yard Apartment identified Defendant Lucas as the person he believed was "Omar Hayden." *Id*. at ¶ 14.

Based on the pattern of fraud committed with a fake Ohio driver's license, compiling over $350,000 in missed payments at seven different residences, the agent requested authority to search the Navy Yard Apartment for evidence of wire fraud. Magistrate Judge Faruqui in turn found probable cause to believe that evidence of wire fraud would be discovered inside the Navy Yard Apartment. A substantial amount of evidence of the wire fraud was in fact discovered from inside the Navy Yard Apartment, including Defendant Edwards's involvement in a sophisticated multi-state wire fraud scheme using stolen identity information.

## IV. LAW AND ARGUMENT

Defendant Edwards advances several arguments in an effort to suppress incriminating evidence recovered from the Navy Yard Apartment. Defendant Edwards argues (1) that the warrant was unsupported by probable cause, (2) that law enforcement had no good faith basis to rely on the Magistrate Judge's finding of probable cause, and (3) the affidavit contained material falsehoods that were made knowingly, intentionally, or with reckless disregard for the truth. These arguments are without merit.

A. <u>Defendant Edwards Lacks Standing to Seek Suppression.</u>

As an initial matter, Defendant Edwards has not provided a basis for which he has standing to seek suppression. He was not the leaseholder, nor was his name on the lease. He has not claimed to be an overnight guest or social guest of the leaseholder. He has not provided any explanation of why he was in this apartment, or why he believes he had a reasonable expectation of privacy in the apartment. Defendant Edwards was essentially a squatter in an apartment accruing tens of thousands of dollars in unpaid rent.

Since the decision in *Katz v. United States*, 389 U.S. 347 (1967), it has been the law that "capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). A subjective expectation of privacy is legitimate if it is "'one that society is prepared to recognize as 'reasonable,'" *id*., at 143–44. Additionally, an individual's status as an overnight guest is enough to show that he had a reasonable expectation of privacy in the home where he is found. *Minnesota v. Olson*, 495 U.S. 91, 96 (1990).

Defendant Edwards does not claim to be an overnight guest. If he did make that claim, the Court should in turn ask for the name of the person who granted Defendant Edwards permission to be an overnight guest. Without this step, the Government does not see an avenue where he has standing to suppress this evidence.

The D.C. Circuit evaluated a similar issue in *United States v. Gale* wherein it held that a defendant who cannot prove he was an overnight guest and can offer no legal authority to be present inside a residence, lacks a legitimate expectation of privacy in the premises required to challenge a search. *United States v. Gale*, 136 F.3d 192, 196 (D.C. Cir. 1998).

Various sister circuits have also held that those who inhabit a residence wrongfully may not claim a legitimate expectation of privacy in the property. *See United States v. Whitehead*, 415 F.3d 583, 587 (6th Cir. 2005) (citing *United States v. McRae,* 156 F.3d 708, 711 (6th Cir. 1998)) (concluding that a defendant who had been living in a vacant house for approximately one week had failed to demonstrate that he had a legitimate expectation of privacy); *United States v. Ross,* No. 00-6453, 2002 WL 1478586 (6th Cir. Jul. 9, 2002) (unpublished) (holding that a defendant who was squatting in his apartment after failing to pay the rent for several months failed to demonstrate a legitimate expectation of privacy); *United States v. Cunag,* 386 F.3d 888 (9th Cir. 2004) (finding a patron who procured a hotel room through fraud did not have a reasonable expectation of privacy in the room); *United States v. Dodds,* 946 F.2d 726 (10th Cir. 1991) (concluding that a defendant apprehended in an abandoned apartment where he sometimes slept had failed to demonstrate that he had a legitimate expectation of privacy).

Defendant Edwards must offer some legitimate expectation of privacy in the Navy Yard Apartment if he wishes to proceed on this Motion.

      B.  <u>Assuming Standing, the Warrant is Supported by Probable Cause.</u>

The task of a judicial officer from whom a search warrant is requested is "to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238 (1983); *see also United States v. Laws*, 808 F.2d 92, 94 (D.C. Cir. 1986) (affidavit must set forth sufficient facts to induce a "reasonably prudent person" to believe evidence of crime will be found). The Supreme Court has stated that probable cause requires a fair probability, not complete certainty. *Florida v. Harris,* 568 U.S. 237 (2013). The reviewing court will not make a *de novo* determination of probable cause but will uphold the decision to issue the warrant if it is supported by substantial evidence. *Massachusetts v. Upton,* 466 U.S. 727, 728 (1984) (*per curiam*). Accordingly, courts give "great deference" to the issuing judge's probable-cause determination. *United States v. Spencer,* 530 F.3d 1003, 1006 (D.C. Cir. 2008) (citing *Gates,* 462 U.S. at 236).

In the case at hand, Magistrate Judge Faruqui was presented with facts supporting a search warrant to seize evidence of wire fraud violations. A suspect had used a fraudulent Ohio driver's license to rent the Navy Yard Apartment. The fraudulent Ohio driver's license was used to rent several additional units in the area, accumulating in excess of $350,000 in missed payments. An apartment complex employee believed that Defendant Lucas was Omar Hayden, a fact that is easily disproved. As provided in the affidavit, the Navy Yard Apartment was obtained through an online leasing portal, which by its definition, is a wire communication operating in interstate commerce.

> Title 18, United States Code, Section 1343 provides that,
>
> "Whoever, having devised or intending to devise any *scheme or artifice to defraud*, or for obtaining money or *property* by means of false or *fraudulent pretenses*, representations, or promises, *transmits or causes to be transmitted by means of wire*, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both."

Based on this evidence, probable cause existed to believe that evidence of wire fraud would be found inside the Navy Yard Apartment.

If this Court finds that the search warrant lacked probable cause, it should still deny suppression because the Government, in good faith, relied on a finding by a neutral magistrate. "A police officer is ordinarily entitled to rely on the magistrate's conclusion." *United States v. Spencer*, 530 F.3d 1003, 1006 (D.C. Cir. 2008). "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination . . . ." *Leon,* 468 U.S. at 921. So long as the officer relied in objective good faith on the issuing judge's determination, reviewing courts may not apply the exclusionary rule. *Id.* at 922–23.

The basic rule, in short, is that "the police, having turned the probable cause decision over to another person . . . are generally entitled to presume that the magistrate knows what he is doing." *Spencer*, 530 F.3d at 1007 (footnote and citation omitted). "When officers have acted pursuant to a warrant, the prosecution should ordinarily be able to establish objective good faith without a substantial expenditure of judicial time." *Leon,* 468 U.S. at 924.

Agents executing this warrant acted in good faith and relied on a detached neutral Magistrate Judge's decision that the affidavit was supported by probable cause. Accordingly, the evidence seized pursuant to the warrant should not be suppressed.

C.  The Warrant does not Contain Material Falsehoods.

Defendant Edwards next turns to arguing, incorrectly, that the warrant contains material falsehoods. It simply does not. The *Leon* rule has a few exceptions. *See id*. at 922–23. As relevant here, the *Leon* rule does not apply when the officer seeking the search warrant made false statements in the affidavit and did so either knowingly or with reckless disregard for the truth. *See id.* at 923; *United States v. Richardson*, 861 F.2d 291, 294 n.5 (D.C. Cir. 1988). This is known as the *Franks* exception. *See Franks v. Delaware*, 438 U.S. 154 (1978).

To exclude evidence under *Franks*, the defendant must meet two requirements. First, the defendant must make a substantial preliminary showing "that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *Id*. at 155–56. Second, "with the affidavit's false material set to one side, the affidavit's remaining content" must be "insufficient to establish probable cause." *Id.* at 156. The substantial showing required under *Franks* must be "more than conclusory" and "accompanied by an offer of proof." *United States v. Gaston,* 357 F.3d 77, 80 (D.C. Cir. 2004). A hearing is appropriate only if these two factors are satisfied.

Defendant Edwards has not presented this Court with a false statement contained in the affidavit, let alone one made knowingly, intentionally, or with reckless disregard for the truth. Even then, Defendant Edwards has not shown how absent any alleged false statement, the warrant is deficient.

Defendant Edwards attempts to paint the warrant as having a falsehood related to the existence of an actual person named "OMAR ELIJAH HAYDEN." Defendant's Motion misstates the context of the warrant and draws inappropriate conclusions from an Instagram and LexisNexis search.

Paragraph five of the warrant affidavit states that the management company controlling the Navy Yard Apartment "received an application for an apartment rental via their on-line portal. The application was submitted by an individual identifying himself as OMAR HAYDEN. The applicant submitted an image of an Ohio driver's license in the name of Omar Elijah Hayden, with a date of birth September 10, 1983, and driver's license number TQ760527." (Ex. 1, ¶ 5). The affidavit goes on to explain that after paying the initial apartment deposit, via money order, the occupants then lived in the unit "for 26 months without making even a single payment," representing a loss in excess of $93,000. Defendant Edwards does not allege anything in that portion of the affidavit is false or misleading. *Id.* at ¶8.

Paragraph nine of the affidavit states that the "FBI determined that the Ohio driver's license in the name OMAR ELIJAH HARDEN is fraudulent," and that "[n]o such license was ever issued by that State." Defendant Edwards does not allege that these statements are false or misleading. *Id.* at ¶9. This paragraph goes on to explain that "the FBI was able to determine [that] it appears that there is no one in the United States with the name OMAR ELIJAH HAYDEN and the date of birth September 10, 1983." Defendant Edwards claims that this statement is false.

Defendant does so by incorrectly interpreting a LexisNexis "person search." The Motion alleges that "Omar E Hayden is someone in the United States." (Def. Mot. at p.6). This is simply incorrect. Defendant attaches a LexisNexis person search for the fictitious persona of "Omar E Hayden." This report does not claim that there is actually a living person named "OMAR ELIJAH HAYDEN" with the date of birth September 10, 1983 as the affidavit references. Defendant's exhibit simply says that there is a name "Omar E Hayden" associated with various addresses in the area. That much was already clear from the search warrant affidavit that explained how this

fictitious persona was being used throughout the District of Columbia area to illegally rent apartments.  The affidavit stated:

> "[a]dditional investigation by the FBI determined *at least* six other apartments in the Washington Metropolitan Area have also been leased by an applicant using the exact same Ohio driver's license in the name of OMAR ELIJAH HAYDEN.  One of those apartments is also in the District of Columbia, and two more are in Suitland, Maryland.  The others are located in Upper Marlboro, Hyattsville, and College Park, Maryland…[t]he collective losses of all seven apartment complexes exceed $350,000."  (Ex 1, ¶11)

The FBI examined the leases and noted that three of them used the same internet-based cellular telephone number 443-990-0079 and the same e-mail address. (Ex. 1, ¶ 12).  Defendant Edwards's LexisNexis search document is merely referencing other fraudulently rented units using a fictitious identification card.  Defendant Edwards's exhibit cuts against his own argument as it shows that no valid driver's license has ever been issued to an Omar Elijah Hayden with the accompanying date of birth. (Def. Mot. Att. 4, at p.1, "Drivers Licenses – 0 licenses.").

The affidavit further explained that "an employee of the [apartment] advised the FBI that the employee saw the man known to him as OMAR HAYDEN walking through the building's lobby during the week of March 17, 2022.  The employee was shown a photograph of [co-defendant] LUCAS and confirmed that he [Lucas] is the subject known to him as OMAR HAYDEN." (Ex. 1, ¶ 14)

Defendant Edwards does not contest that a fake Ohio driver's license in the name of Omar Elijah Hayden was used to rent at least seven apartments in the District of Columbia area, including the Navy Yard Apartment.  He does not contest any of the remaining facts in the affidavit.  He merely cites other locations associated with this fictitious persona.

While not contained in the affidavit, FBI agents eventually located someone named Omar Hayden with the corresponding date of birth, but a different social security number.  His middle

name, however, is not Elijah, nor does it start with an E. He has never been issued an Ohio driver's license.

If Defendant Edwards wishes to offer evidence that Omar Elijah Hayden with an Ohio driver's license is a real person, not simply a well-used fake ID card, the Government invites Defendant Edwards to supplement the Motion.

Even if the Court were to believe that this statement is false, Defendant Edwards has not made an argument as to how it was made knowingly, intentionally, or with reckless disregard for the truth. This is a requirement of *Franks* that he has not met.

If this Court were to go the extra step to evaluate the warrant by setting aside the passage in question,

> "the FBI was able to determine [that] it appears that there is no one in the United States with the name OMAR ELIJAH HAYDEN and the date of birth September 10, 1983,"

the Defendant would still not be entitled to a *Franks* hearing. A *Franks* hearing is only appropriate if, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause. The statement at issue carries minimal importance in the evaluation of the search warrant. The remaining information in the warrant is sufficient to meet the probable cause standard necessary to obtain a search warrant.

D. Defendant's Additional Arguments.

Defendant argues that the warrant contains a conclusory statement, and therefore, the evidence should be suppressed. (Def. Mot. at p.7). In an effort to be fully transparent with the issuing Magistrate Judge, the affidavit included the statement that Defendants Edwards and Lucas were also the subjects of a narcotics investigation. Ex. 1, ¶10. Defendant Edwards claims that, because this statement is unsupported by underlying facts, the warrant should fail. (Def. Mot. at

p.7). Defendant Edwards misinterprets case law. The law is clear that an affidavit in support of a warrant application "must provide the magistrate with a substantial basis for determining the existence of probable cause," and it cannot consist of mere allegations or conclusory statements. *Gates*, 462 U.S. at 239. Defendant Edwards claims, without legal authority or citation, that because a warrant contains a single allegation or conclusion, it is therefore defective as a whole. That is not the law. Defendant Edwards ignores the other paragraphs providing a substantial basis for the search warrant, which was a warrant seeking evidence of wire fraud violations.

Defendant Edwards also argues that the warrant failed to establish probable cause as it relates to him. (Def. Mot. at 7). The search warrant at issue was issued for a premises, not a person.

Additionally, Defendant Edwards argues that the agents exceeded the scope of their search warrant authority by searching him while on scene. Defendant Edwards does not state what evidence he believes was found on his person that should be suppressed as a result of this conduct. The conduct at issue nonetheless conforms to standing precedent. *See Michigan v. Summers*, 452 U.S. 692 (1981); *Terry v. Ohio*, 392 U.S. 1 (1968). Agents executed a search warrant at the Navy Yard Apartment and discovered Defendant Edwards inside. Defendant Edwards has a prior conviction for armed robbery with a firearm. Agents were permitted to search Defendant Edwards for their own protection. Furthermore, Attachment B of the search warrant authorizes law enforcement to search for papers, receipts, identification cards, checks, and other records that constitute evidence of the state of mind of Collin Edwards. (Ex. 1, P.1). Agents were authorized to search for this evidence on Defendant Edwards during the execution of the warrant.

## V. CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court deny Defendant Edwards's Motion. The warrant is supported by probable cause. Agents relied on the decision of a neutral Magistrate and operated in good faith. Defendant Edwards has not offered this Court any credible evidence to show a material, intentional falsehood contained in the warrant that would justify a *Franks* hearing.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar Number 481052

By: /s/ *Kevin Rosenberg*
Kevin Rosenberg
Assistant United States Attorney
Ohio Bar 0081448
United States Attorney's Office
601 D Street NW
Washington, D.C. 20530
Telephone: 202-252-7933
Email: Kevin.Rosenberg@usdoj.gov